IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JONATHAN FLY, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. SAG-20-3310 |
| DOC/WCI, *et al.*, | * | |
| Defendants. | * | |
| | *** | |

## MEMORANDUM

Plaintiff Fly is a prisoner confined at Western Correctional Institution ("WCI") who complains that he is receiving inadequate care for serious medical issues related to Crohn's disease. *See* ECF No. 5-3. Fly raised two primary medical complaints, namely that he is not receiving (1) a sufficient supply of colostomy bags or (2) his previously prescribed and recommended Entyvio infusions. Given the seriousness of the allegations raised, counsel for the Maryland Department of Public Safety and Correctional Services was required to provide a preliminary response, explaining what has been done to ensure that Fly is receiving appropriate medical care. ECF No. 7. Counsel filed a response as directed. ECF No. 8.

Fly's amended complaint, dated December 26, 2020, states that he received Entyvio when he was "incarcerated at [T]owson" from May 9, 2019 through October 14, 2019 prior to his transfer to WCI. ECF No. 5-3 at 5. He states that he has not received any medication to treat his Crohn's disease since his arrival at WCI in October 2019. *Id*. at 8.

Counsel's response includes a copy of Fly's medical records, certified on May 11, 2021. ECF No. 8-2, 8-3. The records generally document that Fly is to be provided with a two-week supply of colostomy bags. Additional bags are not provided because Fly "was found to be carrying a home[-]made shank (KNIFE) in his colostomy bag…". ECF No. 8-2 at 92. The weapon was

"causing holes and damaging them." *Id.* at 90.  Medical records further state that "this puts staff and fellow inmate[s] at significant risk of injury." *Id.* at 92.

The medical records do not indicate that Fly has ever received medication at WCI for Crohn's disease and the preliminary response does not include a declaration by a medical provider addressing this issue.  Instead, the records document that Fly received Entyvio from 2016 through 2019 and also that an alternative medication, Remicade, was not successful to treat his illness. ECF No. 8-1 at 80, 85.

The medical records document that while housed at WCI, Fly was seen by a consulting gastroenterologist who continually made requests for Fly to receive Entyvio infusions at 8 week intervals. *See* 8-1 at 8 (11/26/19 note referencing GI consult of 10/23/19 recommending Entyvio infusions "be continued"); *id.* at 16 (4/13/20 chronic care note referencing need for Entyvio infusions); *id.* at 23 (5/26/20 consultation referencing pre-incarceration Entyvio infusions, request to restart infusions, and notes Fly not currently on medications); *id.* at 25 (5/26/20 sick call referencing prior Entyvio infusions, and GI consult of 11/15/19 agreeing to continued need); *id.* at 27 (6/17/20 note documenting gastroenterologist consult recommending Entyvio infusion be scheduled and noting it was originally approved on 12/3/19); *id.* at 30 (6/23/20 chronic care note referencing need to continue infusions); *id.* at 31 (7/1/20 request "asap" for Entyvio infusion approved on 12/3/19  per 6/17/20 gastroenterologist consultation); *id.* at 35 (7/7/20 consultation noting infusion needed "asap");  *id.* at 37 (7/7/20 chart update noting "cost concerns" with Entyvio infusions and need to speak with patient regarding changing infusion to Remicade); *id.* at 41 (7/8/20 chronic care note that Fly "will be switched to Remicade"); *id.* at 42 (7/8/20 consult note that Entyvio is unavailable at GMC due to cost of drug and recommendation that Fly receive a consult at UMMS for an Entyvio infusion); *id.* at 68 (10/30/20 chart note that response from

University of Maryland Hospital Center for a consult is outstanding pertaining to Entyvio). Medical records dated after October 30, 2020 do not reference that Fly is receiving Entyvio infusions, Remicade, or that medication remains an unresolved issue. Fly has also not provided further information to the Court since filing his amended complaint.

At this juncture, the Court lacks sufficient information to determine if preliminary relief is warranted. A preliminary injunction is an extraordinary and drastic remedy. *See Munaf v. Geren*, 553 U.S. 674, 689-90 (2008). To obtain a preliminary injunction, a movant must demonstrate: 1) that he is likely to succeed on the merits; 2) that he is likely to suffer irreparable harm in the absence of preliminary relief; 3) that the balance of equities tips in his favor; and 4) that an injunction is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008); *The Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346 (4th Cir. 2009), *vacated on other grounds*, 559 U.S. 1089 (2010), *reinstated in relevant part on remand*, 607 F.3d 355 (4th Cir. 2010) (per curiam). Without additional information from the medical provider, it is not clear if Fly is presently receiving needed medication, and if he is not, the reason why he is not.

The Court will direct service of the amended complaint. The Court previously held that the amended complaint may go forward against WCI Warden Weber and Corizon Health, the Medical Provider at WCI. ECF No. 7. In light of counsel's response, when Corizon Health is served and responds to the complaint, it is directed to address if there is an official policy or custom pertaining to the dispensing of Entyvio to treat Crohn's disease and if so, to provide the policy. *See Austin v. Paramount Parks*, 195 F.3d 715, 727-28 (4th Cir. 1999) (holding that § 1983 liability may attach to a private corporation if there is an official policy or custom causing a deprivation of federal rights). In addition, WCI Medical Director Asresahegn Getachew, holds a supervisory position, and will be added as a defendant to this action. Both Corizon Health and Getachew will be directed

to include in their response, information as to if Fly is presently receiving Entyvio and if so, the date treatment with Entyvio began. If Fly is not presently receiving Entyvio, Corizon Health and Getachew are to state the reason why the medication is not being provided, and what, if any, other treatment Fry is receiving to treat his Crohn's disease

Fly has also named DOC/WCI as a defendant.  In a suit arising under 42 U.S.C. § 1983, the doctrine of respondeat superior generally does not apply and liability attaches only upon a defendant's personal participation in the constitutional violation.  *See Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985); *see also Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004).  Naming institutions or using the term "staff" or the equivalent as a name for alleged defendants, without naming specific staff members, is insufficient to state a claim against a "person" in a § 1983 action. *Harden v. Green*, 27 F. App'x 173, 178 (4th Cir. 2001) citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70–71 (1989) (other citations omitted); *see also Horton v. Kopp*, 2018 WL 1243537, at *2 (D. Md. 2018).   Defendant DOC/WCI will be dismissed from this action.

The Court will direct service of the amended complaint on defendants WCI Warden Weber, Corizon Health, and Asresahegn Getachew.  Fly may file a motion for preliminary injunctive relief if his medical care is deficient causing him irreparable harm and the Court will evaluate his request at that time.

An Order follows.

<u>December 3, 2021</u>                                                  _____/s/_____
Date                                                                            Stephanie A. Gallagher
                                                                                    United States District Judge