**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| JONATHAN FLY, | |
| Plaintiff, | |
| v. | Civil Action No. SAG-20-3310 |
| DOC/WCI, et al., | |
| Defendants. | |

<u>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS CORIZON HEALTH,
INC. AND ASRESAHEGN GETACHEW, M.D.'S MOTION TO DISMISS OR,
ALTERNATIVELY, FOR SUMMARY JUDGMENT**</u>

Defendants Corizon Health, Inc. and Asresahegn Getachew, M.D., ("Defendants"), by undersigned counsel, hereby submit this Memorandum of Law in support of their Motion to Dismiss or, Alternatively, for Summary Judgment.

### I.  <u>STATEMENT OF FACTS</u>

#### A.  **Plaintiff's Allegations and Procedural History**

Plaintiff Jonathan Fly is a prisoner confined at Western Correctional Institution ("WCI") who complains that he is receiving inadequate care for serious medical issues related to his Crohn's disease. *See* ECF No. 5-3. Plaintiff raised two primary medical complaints, namely that he is not receiving (1) a sufficient supply of colostomy bags or (2) his previously prescribed and recommended Entyvio infusions. Plaintiff's amended complaint, dated December 26, 2020, states that he received Entyvio when he was "incarcerated at [T]owson" from May 9, 2019 through October 14, 2019 prior to his transfer to WCI. ECF No. 5-3 at 5. He states that he has not received any medication to treat his Crohn's disease since his arrival at WCI in October 2019. *Id.* at 8.

The Court directed service of the amended complaint. ECF No. 9 and 10. The Court previously held that the amended complaint may go forward against WCI Warden Weber and Corizon Health, the Medical Provider at WCI. ECF No. 7. In an Order and Memorandum from the Court dated December 3, 2021, the Court stated that, in light of counsel's response, when Corizon Health is served and responds to the complaint, it is directed to address if there is an official policy or custom pertaining to the dispensing of Entyvio to treat Crohn's disease and if so, to provide the policy. *See Austin v. Paramount Parks*, 195 F.3d 715, 727-28 (4th Cir. 1999) (holding that § 1983 liability may attach to a private corporation if there is an official policy or custom causing a deprivation of federal rights). ECF No. 9 and 10. Corizon can confirm that it does not have an official policy or custom pertaining to the dispensing of Entyvio to treat Crohn's disease. In addition, private corporations can only be held liable under §1983 if "an official policy or custom of the corporation causes the alleged deprivation of federal civil rights." *Grayson v. Peed*, 195 F.2d 692, 695-96 (4th Cir. 1999). In the present case, Plaintiff levies a number of baseless claims against Corizon Health, Inc. and fails to point to any official policy or custom he believes caused the alleged deprivation of medical care.

In addition, the Court determined that WCI Medical Director Asresahegn Getachew holds a supervisory position and will be added as a defendant to this action. ECF No. 9 and 10. The Court further stated that both Corizon Health and Getachew will be directed to include in their response, information as to if Plaintiff is presently receiving Entyvio and if so, the date treatment with Entyvio began. ECF No. 9 and 10. The Court stated that, if Plaintiff is not presently receiving Entyvio, Corizon Health and Getachew are to state the reason why the medication is not being provided, and what, if any, other treatment Plaintiff is receiving to treat his Crohn's disease.

ECF No. 9 and 10. Dr. Getachew's Declaration filed in support of this Motion addresses both issues.

Plaintiff also named DOC/WCI as a defendant but Defendant DOC/WCI was dismissed from this action on December 3, 2021. The Court directed service of the amended complaint on defendants WCI Warden Weber, Corizon Health, and Asresahegn Getachew. ECF No. 9 and 10.

## B. Plaintiff's Medical Care

Plaintiff's medical records generally document that Plaintiff is to be provided with a two-week supply of colostomy bags. Additional bags are not provided because Plaintiff "was found to be carrying a home[-]made shank (KNIFE) in his colostomy bag...". ECF No. 8-2 at 92. The weapon was "causing holes and damaging them." *Id.* at 90. Medical records further state that "this puts staff and fellow inmate[s] at significant risk of injury." *Id.* at 92.

The records document that Plaintiff received Entyvio from 2016 through 2019 and also that an alternative medication, Remicade, was not successful to treat his illness. ECF No. 8-1 at 80, 85. The medical records document that while housed at WCI, Plaintiff was seen by a consulting gastroenterologist who made requests for Plaintiff to receive Entyvio infusions at 8 week intervals. *See* 8-1 at 8 (11/26/19 note referencing GI consult of 10/23/19 recommending Entyvio infusions "be continued"); *id.* at 16 (4/13/20 chronic care note referencing need for Entyvio infusions); *id.* at 23 (5/26/20 consultation referencing pre-incarceration Entyvio infusions, request to restart infusions, and notes Fly not currently on medications); *id.* at 25 (5/26/20 sick call referencing prior Entyvio infusions, and GI consult of 11/15/19 agreeing to continued need); *id.* at 27 (6/17/20 note documenting gastroenterologist consult recommending Entyvio infusion be scheduled and noting it was originally approved on 12/3/19); *id.* at 30 (6/23/20 chronic care note referencing need to continue infusions); *id.* at 31 (7/1/20 request

"asap" for Entyvio infusion approved on 12/3/19 per 6/17/20 gastroenterologist consultation); *id.* at 35 (7/7/20 consultation noting infusion needed "asap"); *id.* at 37 (7/7/20 chart update noting "cost concerns" with Entyvio infusions and need to speak with patient regarding changing infusion to Remicade); *id.* at 41 (7/8/20 chronic care note that Fly "will be switched to Remicade"); *id.* at 42 (7/8/20 consult note that Entyvio is unavailable at GMC due to cost of drug and recommendation that Fly receive a consult at UMMS for an Entyvio infusion); *id.* at 68 (10/30/20 chart note that response from University of Maryland Hospital Center for a consult is outstanding pertaining to Entyvio).

On July 12, 2021, Plaintiff was seen by Dr. Caleb Blaine Hudspath for his Crohn's disease. See Plaintiff's Additional Medical Records, attached as Exhibit A. The Admission Note states that Plaintiff was on Entyvio from 2016 through September 2019 (prior to incarceration). During that time, he was being seen "at the Prisoner's clinic for CD medical management (resuming Entyvio versus starting Remicade)." Ex. A at 69. Plaintiff also received an endoscopy on that date. Id.

In a Clinical Support note by Dr. Eric Goldberg/Dr. Ahmed Chatila of University of Maryland Medical Center dated October 13, 2021, Plaintiff was referred to the UMMS Gastroenterology/Hepatology Clinic for follow-up for his Crohn's disease. Ex. A at 372. Plaintiff was diagnosed at the age of 8 years old and failed Remicade and further maintained on Entyvio between 2016-2019. The Note indicates that the Plaintiff was seen by Dr. Cross (last in October of 2020) for restaging of Crohn's disease prior to restarting Entyvio. During his prior visit, Dr. Cross recommended Entyvio given that he had a disease that progressed on Remicade. Id. Dr. Chatila recommended that Plaintiff begin Entyvio which is a 300 mg infusion starting at 0, 2, and 6 weeks and then every 8 weeks thereafter. Id.

Dr. Getachew followed-up with the schedulers at WCI and through his Declaration, confirms the following:

a.  Plaintiff's first Entyvio infusion was scheduled for November 9, 2021.

b.  On November 9, 2021, the medical panel called and stated that Mr. Fly refused to go out for that appointment.

c.  On November 30, 2021, UMMS was called to reschedule Mr. Fly's Entyvio infusion.

d.  On January 28, 2022, Mr. Fly had his first Entyvio infusion. The next two dates were scheduled for February 11, 2022 and March 11, 2022.

e.  On February 11, 2022, officers informed scheduling that Mr. Fly refused to go out for treatment again.

f.  Due to the February 11, 2022 appointment being refused and due to the fact that this infusion has to be a month apart, the March 11, 2022 infusion was cancelled per UMMS.

g.  On March 17, 2022, the WCI schedulers received a call from "Nicole" at UMMS infusion center stating that, because Mr. Fly has not been consistent with his infusions, he will have to restart treatment and a new order (consult) is needed. The UMMS GI also wanted to see the patient in their office prior to restarting his infusions to reiterate the importance of being consistent with infusions.

h.  On April 13, 2022, Mr. Fly saw the UMMS GI at UMMS. Three infusions were scheduled for April 25, 2022, May 9, 2022, and June 10, 2022. He was also scheduled to see the provider at UMMS on June 10, 2022.

i.  Dr. Getachew's current understanding is that Mr. Fly was seen on April 25, 2022 for infusion #1.

See. Dr. Getachew's Declaration attached as <u>Exhibit B</u>. Dr. Getachew's current understanding is that Mr. Fly received infusion #1 on April 25, 2022 and is scheduled to receive infusion #2 on May 9, 2022, and June 10, 2022. <u>Id</u>. He also indicated that it is crucial that Mr. Fly continues to cooperate with the treatment of his Crohn's disease and goes to his appointments to receive his infusions. <u>Id</u>. Lastly, Dr. Getachew confirmed that the patient has been provided appropriate medical treatment for his medical conditions, including his Crohn's disease. <u>Id</u>. He has access to medical treatment for any ongoing complaints. He did not disregard the patient's medical complaints at any time. <u>Id</u>.

## II. <u>STANDARD OF REVIEW</u>

### A.    Standard for Motions to Dismiss

As to a 12(b)(6) motion to dismiss, a plaintiff fails to state a claim when the complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). This requirement "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Twombly*, 550 U.S. at 555). In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

The Supreme Court has held that "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citations and quotation marks omitted). However, the Fourth Circuit has "not read *Erickson* to undermine *Twombly's* requirement that a pleading contain more than labels and conclusions." *Giarratano v. Johnson*, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (internal quotation marks omitted) (applying *Twombly* standard in dismissing pro se complaint); *accord Atherton v. Dist. of Columbia Off. of Mayor*, 567 F.3d 672, 681-82 (D.C. Cir. 2009) ("A *pro se* complaint ... 'must be held to less stringent standards than formal pleadings drafted by lawyers.' But even a *pro se* complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'") (quoting *Erickson*, 551 U.S. at 94 and *Iqbal*, 556 U.S. at 679).

## B.    Standard for Motions for Summary Judgment

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is appropriate against a plaintiff who fails to make a showing sufficient to establish the existence of an element essential to his case and on which he will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The non-moving party "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Failure to demonstrate a genuine issue for trial will result in summary judgment. *See Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 951 (4th Cir. 1995).

"The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."

*Anderson*, 477 U.S. at 252. The Court may rely on only facts supported in the record, not simply assertions in the pleadings, to fulfill its "affirmative obligation ... to prevent 'factually unsupported claims and defenses' from proceeding to trial." *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987). "Unsupported speculation is not sufficient to defeat a summary judgment motion." *Id.* (citing *Ash v. United Parcel Serv.*, 800 F.2d 409, 411-12 (4th Cir. 1986)).

**C.    Standard for Deliberate Indifference Claims Under 42 U.S.C. § 1983**

Federal claims by prisoners that they received constitutionally deficient medical care in violation of the Eighth Amendment are governed by the deliberate indifference standard. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* The "deliberate indifference" standard is made up of (1) an objective component requiring that the pain or condition be sufficiently serious; and (2) a subjective component requiring that the offending officials acted with a sufficiently culpable state of mind. *Id.* at 104-06. The objective component is satisfied by a serious medical condition and the subjective component is satisfied by showing deliberate indifference by prison officials. *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998). "[A] 'serious ... medical need' is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (citing *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)).

"[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). It requires that

a prison official "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. A prison official is not deliberately indifferent if she did not actually draw the inference that the prisoner was exposed to a specific risk of harm. *Id.* at 844; *see also Rich v. Bruce*, 129 F.3d 336, 338 (4th Cir. 1997). Indeed, absent subjective knowledge, a prison official is not liable even "if the risk was obvious and a reasonable prison official would have noticed it." *Farmer*, 511 U.S. at 842.

"[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106; *accord Johnson*, 145 F.3d at 168. "Nor does a prisoner's disagreement with medical personnel over the course of his treatment make out a cause of action." *Taylor v. Bennett*, 105 F. Supp.2d 483, 487 (E.D. Va. 2000) (citing *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985)).

Officials can only be held liable for their own conduct. *Iqbal*, 556 U.S. at 676-77; *see also Danser v. Stansberry*, 772 F.3d 340, 349 (4th Cir. 2014) ("[S]upervisors may not be held liable under 42 U.S.C. § 1983 for actions of subordinate employees unless the supervisors have 'direct culpability' in causing the plaintiff's injuries.") (citing *McWilliams v. Fairfax Cnty. Bd. of Supervisors*, 72 F.3d 1191, 1197 (4th Cir. 1996)), *abrogated on other grounds by Oncale v. Sundower Offshore Servs., Inc.*, 523 U.S. 75, 79 (1998); *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997) ("Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation.").

## III. <u>ARGUMENT</u>

### A.  PLAINTIFF HAS FAILED TO STATE A CLAIM AGAINST DEFENDANTS

#### a.  Plaintiff has Failed to File a Claim Before the Health Claims Alternative Dispute Resolution Office Prior to Filing This Action in the United States District Court for the District of Maryland.

"Medical malpractice claims must first be presented to the Maryland Health Claims Arbitration Board before a complaint may be filed in a court of law." *Miller v. Lehman*, No. JKB14-0896, 2015 WL 641299, at *3 (D. Md. Feb. 12, 2015) (unpublished) (citing Md. Code Ann., Cts. & Jud. Proc. § 3-2A-04 et seq. (2007)). A plaintiff is "required under Maryland law to bring his medical malpractice claim before the Health Claims Arbitration Board as a condition precedent to filing a malpractice or negligence suit." *Id.*; see also *Johnson v. Wexford Health Sources, Inc.*, No. JKB-14-2513, 2015 WL 3441958, at *3 (D. Md. May 26, 2015) (unpublished) ("Should plaintiff wish to seek damages based on medical malpractice, he is required under Maryland law to bring his medical malpractice claim before HCADRO as a condition precedent to filing a malpractice or negligence suit.").

To the extent Plaintiff attempts to raise a claim of medical malpractice or negligence, he failed to comply with the mandatory prerequisites of filing such a claim because there is no evidence he submitted the claims to the Maryland Health Claims Arbitration Board as required. See Md. Code Ann., Cts. & Jud. Proc. § 3-2A-04 et seq.; *Miller*, 2015 WL 641299 at *3; *Johnson*, 2015 WL 3441958 at *3. Accordingly, any medical malpractice or negligence claim must be dismissed.

**b. During All Times Relevant to the Complaint, There is No Evidence that Plaintiff Received Inadequate Medical Care or that Defendants Were Deliberately Indifferent.**

There is no evidence that Defendants were deliberately indifferent to Plaintiff's medical needs, nor is there evidence that Plaintiff's condition was ignored. In determining whether a prisoner has received adequate medical treatment, a court is entitled to rely on the medical records kept in the ordinary course of operation. *Bennett v. Reed*, 534 F. Supp. 83, 86 (E.D. N.C. 1981), aff'd. 676 F.2d 690 (4th Cir. 1982). When it appears from the entire record that the prison medical authorities have made a sincere and reasonable effort to handle plaintiff's medical problems, plaintiff's constitutional rights have not been violated. *Id*. at 87 (emphasis added).

Plaintiff filed a lengthy Complaint, alleging that each of the defendants are liable for deliberate indifference for failing to provide him with proper medical care regarding his Crohn's disease. See Amended Compl. Defendants Corizon Health, Inc. refer the Court to Plaintiff's medical records, attached as <u>Exhibit A</u>, as proof that Plaintiff was not treated with deliberate indifference as alleged. Plaintiff's relevant medical records illustrate that Plaintiff has received an ongoing course of treatment associated with the various allegations he describes in the Amended Complaint. Accordingly, Plaintiff has failed to state a claim against Defendants, and they should be dismissed from this action.

**i. Allegations against Corizon Health, Inc.**

Plaintiff fails to make any specific allegations against Corizon which Corizon is able to defend itself against. Private corporations can only be held liable under §1983 if "an official policy or custom of the corporation causes the alleged deprivation of federal civil rights." *Grayson v. Peed*, 195 F.2d 692, 695-96 (4th Cir. 1999). In the present case, Plaintiff levies a number of baseless claims against Corizon Health, Inc. and fails to point to any official policy or

custom he believes caused the alleged deprivation of medical care. With regard to Plaintiff's claims asserted against Asresahegn Getachew, M.D., Corizon cannot be held responsible for their actions because Plaintiff cannot rely upon *respondeat superior* alone to establish liability because this principle has no application to 42 U.S.C. §1983 actions. *Monell v. New York City Dep't of Soc. Servs*., 436 U.S. 658, 691-694 (1978). This holding applies to private entities. *Rodriguez v. Smithfield Parking Co*., 338 F.3d 348 (4th Cir. 2003).

Because Plaintiff fails to identify any Corizon policy or custom, Plaintiff's claims against Corizon must be dismissed as they fail to state a claim upon which relief can be granted, or, in the alternative, judgment should be entered in its favor.

### ii.  Allegations against Dr. Asresahegn Getachew

Plaintiff's medical records reflect that Dr. Getachew rendered appropriate treatment to Plaintiff. For example, Plaintiff's medical records indicated that Plaintiff was provided with a two-week supply of colostomy bags; however, additional bags were not provided because Plaintiff "was found to be carrying a home[-]made shank (KNIFE) in his colostomy bag...". ECF No. 8-2 at 92. The weapon was "causing holes and damaging them." *Id.* at 90. Medical records further state that "this puts staff and fellow inmate[s] at significant risk of injury." *Id.* at 92.

The records document that Plaintiff received Entyvio from 2016 through 2019 and also that an alternative medication, Remicade, was not successful to treat his illness. ECF No. 8-1 at 80, 85. The medical records document that while housed at WCI, Plaintiff was seen by a consulting gastroenterologist who made requests for Plaintiff to receive Entyvio infusions at 8 week intervals. *See* 8-1 at 8; *id.* at 16; *id.* at 23; *id.* at 25; *id.* at 27; *id.* at 30; *id.* at 31; *id.* at 35; *id.* at 37; *id.* at 41; *id.* at 42; *id.* at 68.

On July 12, 2021, Plaintiff was seen by Dr. Caleb Blaine Hudspath for his Crohn's disease. See Plaintiff's Additional Medical Records, attached as <u>Exhibit A</u>. The Admission Note states that Plaintiff was on Entyvio from 2016 through September 2019 (prior to incarceration). During that time, he was being seen "at the Prisoner's clinic for CD medical management (resuming Entyvio versus starting Remicade)." <u>Ex. A</u> at 69. Plaintiff also received an endoscopy on that date. <u>Id</u>.

In a Clinical Support note by Dr. Eric Goldberg/Dr. Ahmed Chatila of University of Maryland Medical Center dated October 13, 2021, Plaintiff was referred to the UMMS Gastroenterology/Hepatology Clinic for follow-up for his Crohn's disease. <u>Ex. A</u> at 372. Plaintiff was diagnosed at the age of 8 years old and failed Remicade and further maintained on Entyvio between 2016-2019. The Note indicates that the Plaintiff was seen by Dr. Cross (last in October of 2020) for restaging of Crohn's disease prior to restarting Entyvio. During his prior visit, Dr. Cross recommended Entyvio given that he had a disease that progressed on Remicade. <u>Id</u>. Dr. Chatila recommended that Plaintiff begin Entyvio which is a 300 mg infusion starting at 0, 2, and 6 weeks and then every 8 weeks thereafter. <u>Id</u>.

Dr. Getachew followed-up with the schedulers at WCI and through his Declaration, confirms the following:

   a.  Plaintiff's first Entyvio infusion was scheduled for November 9, 2021.

   b.  On November 9, 2021, the medical panel called and stated that Mr. Fly refused to go out for that appointment.

   c.  On November 30, 2021, UMMS was called to reschedule Mr. Fly's Entyvio infusion.

d.  On January 28, 2022, Mr. Fly had his first Entyvio infusion. The next two dates were scheduled for February 11, 2022 and March 11, 2022.

e.  On February 11, 2022, officers informed scheduling that Mr. Fly refused to go out for treatment again.

f.  Due to the February 11, 2022 appointment being refused and due to the fact that this infusion has to be a month apart, the March 11, 2022 infusion was cancelled per UMMS.

g.  On March 17, 2022, the WCI schedulers received a call from "Nicole" at UMMS infusion center stating that, because Mr. Fly has not been consistent with his infusions, he will have to restart treatment and a new order (consult) is needed. The UMMS GI also wanted to see the patient in their office prior to restarting his infusions to reiterate the importance of being consistent with infusions.

h.  On April 13, 2022, Mr. Fly saw the UMMS GI at UMMS. Three infusions were scheduled for April 25, 2022, May 9, 2022, and June 10, 2022. He was also scheduled to see the provider at UMMS on June 10, 2022.

i.  Dr. Getachew's current understanding is that Mr. Fly was seen on April 25, 2022 for infusion #1.

See. Dr. Getachew's Declaration attached as Exhibit B. Dr. Getachew's current understanding is that Mr. Fly received infusion #1 on April 25, 2022 and is scheduled to receive infusion #2 on May 9, 2022, and June 10, 2022. Id. As indicated through Plaintiff's medical records and through Dr. Getachew, Plaintiff was scheduled to go for treatments to receive Entyvio; however, he had been uncooperative with his treatment and would refuse to go for appointments. Since the infusions have to be a month apart, once Mr. Fly did not go for his

second infusion appointment, the treatment had to be restarted and two new appointments needed to be scheduled. Dr. Getachew and UMMS have encouraged Mr. Fly to continue to cooperate with the treatment of his Crohn's disease and advised him to go to his appointments to receive his infusions. Id. Lastly, Dr. Getachew confirmed that the patient has been provided appropriate medical treatment for his medical conditions, including his Crohn's disease. Id. He has access to medical treatment for any ongoing complaints. He did not disregard the patient's medical complaints at any time. Id.

Plaintiff's medical records are devoid of evidence that Dr. Getachew "conscious[ly] disregard[ed] a substantial risk of serious harm" to Plaintiff's health. *Farmer*, 511 U.S. at 839.

Though Plaintiff may disagree with the course of treatment rendered to him, that disagreement does not cannot support a claim of deliberate indifference. *Wright*, 766 F.2d at 849. To the extent Plaintiff complains of a perceived delay in treatment, Plaintiff does not claim that any such delay caused him substantial harm. *Webb v. Hamidullah*, 281 Fed. Appx. 159, 166, n. 13 (4th Cir. 2008) (unpublished). Because the evidence demonstrates that Defendants did not violate Plaintiff's Eighth Amendment rights, Plaintiff's claims against them should be dismissed.

## B. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT

Even to assume, arguendo, that Plaintiff stated a claim against Defendants sufficient to survive a 12(b)(6) motion, Defendants are still entitled to summary judgment. Plaintiff's relevant medical records, attached hereto as Exhibit A, demonstrate that Defendants did not violate Plaintiff's Eighth Amendment rights or any other rights, and that summary judgment should be granted in their favor.[1]

---

[1] "In determining whether a prisoner has received adequate medical treatment, this Court is entitled to rely on the affidavits of medical personnel and prison medical records kept in the ordinary course of operation." *Bennett v. Reed*, 534 F. Supp. 83, 86 (E.D.N.C. 1981), *aff'd*, 676

## III.  CONCLUSION

There is no dispute that Plaintiff received medical care and treatment, as evidenced by the medical records. Plaintiff cannot establish that there was deliberate indifference to his medical needs. Therefore, the claims against Corizon Health, Inc. and Asresahegn Getachew, M.D. should be dismissed, or in the alternative, should be granted summary judgment as a matter of law.

Respectfully submitted, this 16th day of May 2022.

MARKS, O'NEILL, O'BRIEN, DOHERTY & KELLY, P.C.

By: /s/ Megan T. Mantzavinos
  Megan T. Mantzavinos
  Bar Number:  16416
  mmantzavinos@moodklaw.com
  600 Baltimore Avenue, #305
  Towson, Maryland  21204
  (410) 339-6880
  (410) 339-6881 (Fax)
  *Attorney for Corizon Health, Inc. and*
  *Asresahegn Getachew, M.D.*

---

F.2d 690 (4th Cir. 1982). When "it appears from the entire record that the prison medical authorities have made a sincere and reasonable effort to handle plaintiff's medical problems, plaintiff's constitutional rights have not been violated pursuant to 42 U.S.C. § 1983." *Id.* at 87.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 16th day of May 2022, a copy of the foregoing document was electronically transmitted to this court and mailed first class, postage pre-paid to:

Jonathan Fly #476218
05-16-1995/SID #3919384
North Branch Correctional Institution
14100 McMullen Highway, Southwest
Cumberland, MD  21502
*Pro Se Plaintiff*

/s/ *Megan T. Mantzavinos*
Megan T. Mantzavinos