**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| JONATHAN FLY, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. SAG-20-3310 |
| Weber, *Warden*, *et al.*, | * | |
| Defendants. | * | |

***

**MEMORANDUM OPINION**

Plaintiff Jonathan Fly, a prisoner confined at Western Correctional Institution ("WCI"), filed this civil rights action. ECF No. 1. Fly alleges he is receiving inadequate treatment for a serious medical condition. The action is pending against Defendant Weber, the Warden at WCI; Corizon Health; and Asresahegn Getachew, a physician employed by Corizon Health.

On January 21, 2022, the Attorney General of Maryland filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment on behalf of the State Defendant, Weber. ECF No. 16. Fly was given an opportunity to respond to the motion and has failed to do so. ECF No. 17. The Court finds that a hearing is not necessary. *See* Local Rule 105.6 (D. Md. 2021).

For the reasons discussed below, Defendant Weber's motion, construed as a Motion to Dismiss, will be granted due to Fly's failure to exhaust administrative remedies. Claims against Defendant Weber will be dismissed without prejudice and Weber will be dismissed from this action.

**Background**

On November 16, 2020, the Court received Fly's initial Complaint for filing. The Complaint is dated November 2, 2020. ECF No. 1. As directed, Fly filed an Amended Complaint. ECF No. 5-3. Fly seeks a release from incarceration due to inadequate care he is receiving for

medical issues including Crohn's disease and related medical conditions, citing the possible harm he would suffer if he were to contract COVID-19 at WCI. *Id.* at 3. He also states that he has been denied the medication Entyvio, which successfully treated his Crohn's disease prior to incarceration. *Id.* at 6-7.

This Court cannot grant Fly a release from incarceration because a prison release order can only be entered in very limited circumstances and only by a three-judge panel. *See* 18 U.S.C.A. § 3626(a)(3)(B) ("In any civil action in Federal court with respect to prison conditions, a prisoner release order shall be entered only by a three-judge court . . ."). The Court has already addressed the issue of preliminary relief in this matter, and at this point construes Fly's claim as an action for damages. ECF Nos. 9, 10.

In Fly's Amended Complaint, he states that he filed a grievance as required by the prison's administrative procedures ("ARP"), but the grievance was dismissed because he did not attach sick call slips. *Id.* at 2. He further states that he did not appeal the decision because "I feel as tho [sic] my situation is an emergency and the ARP process is long." *Id.*

Defendant Weber filed a Motion to Dismiss or, in the Alternative, for Summary Judgment asserting that the Amended Complaint should be dismissed because Fly has failed to exhaust his administrative remedies under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). ECF No. 16-1 at 6-9. Weber also asserts that he is not a proper defendant because Fly has not adequately alleged he was personally involved in the events that took place, and there is no respondeat superior liability under § 1983 for State Defendants. ECF No. 16-1 at 4-6. Defendant Weber also asserts he is entitled to Qualified Immunity. *Id.* at 9-10.

In regard to the defense of exhaustion, Weber provides a Declaration by Sergeant Alicia Cartwright, identified as the Administrative Remedy Procedure ("ARP") Coordinator at WCI.

ECF No. 16-3 at 1. Cartwright attests that all ARP forms received by her office are logged and investigated according to Department of Public Safety and Correctional Services ("DPSCS") Directives. *Id.* She attests that all ARPS received by Fly "in relation to his lawsuit, while housed at WCI" are attached to the Declaration. *Id.*

The records provided by Cartwright indicate that Fly has filed a number of ARPs at the facility level, but only one ARP was filed prior to the filing of this lawsuit in November 2020. ECF No. 16-3 at 2. The ARP was received on July 28, 2020, and Fly complained that he had been at WCI for almost a year and had not received his medication for Crohn's disease. *Id.* at 3-4. He stated he was "very sick" and losing a lot of weight. *Id.* at 4. The grievance was assigned for investigation and Fly was asked to provide, no later than August 12, 2020, information indicating the dates in the last 30 days that he had submitted sick call requests or spoken with the medical department. *Id.* at 3. On August 12, 2020, the grievance was procedurally dismissed due to Fly's failure to resubmit the request by the date given. *Id.* at 2-3. Fly next filed a grievance on December 23, 2020, which is more than one month after Fly's initial complaint was received for filing by the Court on November 16, 2020. ECF Nos. 1, 16-3 at 2. This grievance also pertained to medical care, and was dismissed on January 7, 2021 for substantially the same reasons as the earlier grievance. ECF No. 16-3 at 2, 5-6.

Weber also provides a Declaration by Trieste M. Jenkins, identified as the ARP and Inmate Grievance Office ("IGO") Coordinator for the Division of Correction (DOC) where appeals of ARPS are filed. ECF No. 16-4 at 1. Jenkins attests that Fly did not file any appeals of ARPS concerning a lack of medication for Crohn's disease or lack of the prescription Entyvio while housed at WCI. *Id.* She identifies one Request for an Administrative Remedy that the office

received on May 19, 2021 that could not be processed because they were "unable to determine" Fly's intent. *Id.* at 2. In that instance, Fly was advised how to file an appeal of an ARP. *Id.*

Weber provided a third Declaration by F. Todd Taylor, Jr., identified as the Director of the IGO, which is part of DPSCS. ECF No. 16-5 at 1. Taylor attests that Fly did not file any complaints or grievances with the IGO concerning his "lack of medication for Crohn's disease" or lack of a particular medication "Entyvio" while incarcerated at WCI. *Id.*

**Standards of Review**

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).

Under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015). The court may "consider documents attached to the complaint, *see* Fed. R. Civ. P. 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic[.]" *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) (citation omitted).

**Discussion**

Defendant Weber raises the affirmative defense that Fly has failed to exhaust his administrative remedies. ECF No. 16-1 at 6-9. Fly has not responded to Defendant's Motion.

If Fly's claims have not been properly presented through the administrative remedy procedure, they must be dismissed pursuant to the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e, The PLRA provides, in pertinent part:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003), *aff'd*, 98 F. App'x 253 (4th Cir. 2004).

Although exhaustion under § 1997e(a) is not a jurisdictional prerequisite, the plaintiff must nonetheless exhaust before this Court will hear the claim. *See Jones v. Bock*, 549 U.S. 199, 215-16 (2007); *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.2d 674, 682 (4th Cir. 2005). The exhaustion requirement "allow[s] a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Bock*, 549 U.S. at 219. It is designed so that prisoners pursue administrative grievances until they

receive a final denial of the claims, appealing through all available stages in the administrative process. *Chase*, 286 F. Supp. 2d at 530.

Because the Court may not consider an unexhausted claim, *see Bock*, 549 U.S. at 220, in this very real sense, exhaustion prior to federal suit is mandatory. Therefore, a court ordinarily may not excuse a failure to exhaust. *Ross v. Blake*, 578 U.S. 632, 639 (2016) (citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining "[t]he mandatory 'shall'. . . normally creates an obligation impervious to judicial discretion")).

Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). Importantly, however, the court must ensure that "any defects in exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Moreover, an inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a); *see Ross*, 578 U.S. at 636. An administrative remedy is not "available" where the prisoner, "through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (citing *Aquilar-Avellaveda*, 478 F. 3d at1225); *Kaba*, 458 F.3d at 684.

Inmates housed at an institution operated by DPSCS may avail themselves of the administrative grievance process which is designed for "inmate complaint resolution." *See generally* Md. Code (2008 Repl. Vol.), Correctional Services Article ("C.S."), §§ 10-201 *et seq.*; COMAR 12.07.01.01B(1) (defining ARP). If an ARP is filed and denied, the prisoner may appeal the denial within 30 days to the Commissioner of Correction. If the Commissioner of Correction denies the appeal, the prisoner may file a grievance with the IGO, also within 30 days. OPS.185.0002.05D; C.S. § 10-206(a); C.S. § 10-210; COMAR 12.07.01.05B. If the grievance is

determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing. C.S. § 10-207(b)(1); *see* COMAR 12.07.01.07B. An order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review. C.S. § 10-207(b)(2)(ii).

Here, it appears that Fly was aware of the administrative grievance process and the process was available to him. He began the process by filing a grievance on July 28, 2020. ECF 16-3 at 2. Fly then failed, however, to respond to the request that he provide information indicating the dates in the last 30 days that he had submitted sick call requests or spoken with the medical department and the grievance was procedurally dismissed on August 12, 2020. *Id.* at 2-3. There is no record that he appealed this decision, and Fly states in his Amended Complaint that he did not appeal because his situation was an "emergency" and the ARP process is "long." ECF No. 5-3 at 2. The record shows, however, that Fly was without medication for nearly a year before beginning the grievance process, and then he abandoned his grievance quickly when asked to provide additional information during the investigation of his complaint. At the time he filed his Complaint with the Court, his grievance had already been terminated.

There is no avenue available here by which the exhaustion requirement can be excused. Fly's claims against Defendant Weber are unexhausted and will be dismissed without prejudice.[1] Weber will be dismissed from this action. Fly's claims against the remaining Defendants, Getachew and Corizon Health, remain pending at this time.

A separate Order follows.

June 22, 2022
Date

/s/
Stephanie A. Gallagher
UNITED STATES DISTRICT JUDGE

[1] The Court need not address Defendant Weber's additional defenses insofar as claims against him will be dismissed for Fly's failure to exhaust administrative remedies.